

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JES PROPERTIES, INC. d/b/a CYPRESS
TRAILS FARM , a Florida corporation,
and  MICHAEL W. GALLAGHER,

     Plaintiffs,

vs.

                        CASE NO. 8:02-CV-1585-T-24 MAP

USA EQUESTRIAN, INC. (formerly
(the American Horse Show Association),
DAVE BURTON a/k/a DAVE BURTON, SR.
a/k/a DAVE E. BURTON a/k/a DAVE E.
BURTON, SR., BURTON AND SONS, INC.,
DAVID BURTON a/k/a DAVID BURTON, JR.,
a/k/a DAVID E. BURTON a/k/a DAVID E.
BURTON, JR., LITTLEWOOD FENCES, INC.,
BOB BELL, CLASSIC COMPANY,
LTD., and KERNAN HODGES a/k/a MRS.
GEORGE H. HODGES, JR.

     Defendants.

_____/

## COMPLAINT

### INJUNCTIVE RELIEF SOUGHT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiffs, JES Properties, INC. d/b/a Cypress Trails Farm and

Michael W. Gallagher (jointly the "Plaintiffs") and files this their Complaint against the

Defendants, USA Equestrian, Inc. (formerly the American Horse Show Association), Dave

E. Burton a/k/a Dave E. Burton, Sr., Burtons and Sons, Inc. David Burton a/k/a David

Burton, Jr.,  Littlewood Fences, Inc. Bob Bell, Classic Company, Ltd. and Kernan Hodges

a/k/a Mrs. George H. Hodges, Jr. (collectively, the "Defendants") and alleges as follows:

$150.00
10/17639
SCANNED

## GENERAL ALLEGATIONS

### Jurisdiction

1.      This Complaint is filed and the jurisdiction of this Court is invoked under 28 U.S.C. §1337 and 28 U.S.C. §1392.

2.      As it appears more fully hereafter, certain claims set forth herein involve violations of the Federal Anti-Trust laws that the jurisdiction of this Court is also invoked under §§4 and 16 of the Clayton Anti-Trust Act (15 U.S.C. §§15, 26) for damages caused by reason of, and for injunctive relief against, for violation by the Defendants, as hereinafter alleged of §1 of the Sherman Anti-Trust Act (15 U.S.C. §1), §2 of the Sherman Anti-Trust Act (15 U.S.C. §2), §7 of the Clayton Anti-Trust Act (15 U.S.C. §18).

### Parties and Venue

3.      JES Properties, Inc. d/b/a Cypress Trails Farm ("Cypress Trails"), is a Florida corporation with its principal place of business in Pinellas County, Florida.   Cypress Trails owns real property in Hillsborough County, Florida, where it holds horse shows.

4.      Michael W. Gallagher ("Gallagher") is a natural person who resides at 2000 Fire Tower Road, Haines City, Florida which is located in the Middle District of Florida.

5.      USA Equestrian, Inc. (formerly the American Horse Show Association) (the "Federation") is a New York not-for-profit corporation with offices in New York, New York and its principal place of business in Lexington, Kentucky where the Federation performs its corporate management functions.   The Federation is the country's largest multi-breed organization, which has more than 80,000 natural persons as members ("Members"), some

2

of those Members are located in Hillsborough County, Florida and Pinellas County, Florida. The Federation on an annual basis solicits membership dues from individual natural persons including those who reside in the Middle District of Florida. The Federation recognizes more than 2,800 horse shows nationwide ("Recognized Horse Shows") each year including Recognized Horse Shows held in the Middle District of Florida. The Federation governs all aspects of Recognized Horse Shows, including educating and licensing all judges, stewards, and technical delegates who officiate at Recognized Horse Shows. The Members of the Federation who show horses at Recognized Horse Shows are referred to as "Exhibitors."

6. The Federation on an annual basis provides to its Members a Competition Calendar which lists the Federation's Recognized Horse Shows for each year including Recognized Horse Shows held in the Middle District of Florida. The Competition Calendar is mailed to the Federation Members some of which reside in the Middle District of Florida.

7. The Federation also provides its Members with its official magazine known as USA Equestrian ("Horse Show Magazine"). The Horse Show Magazine is published 10 times a year. Recognized Horse Shows are provided a 15% discount for advertising in the Horse Show Magazine. Horse shows which are not recognized by the Federation are not provided with this discount, but may advertise in the Horse Show Magazine. The Horse Show Magazine is mailed to the Federation Members, some of which Members reside in the Middle District of Florida.

8. The Federation also maintains a web page on the Internet which is "www.equestrian.org" ("Web Page"). The Web Page can be accessed by anyone including

individuals who resides in the Middle District of Florida. The Federation through its Web Page solicits individuals some of which live in the Middle District of Florida to become Members.

9.     Dave Burton a/k/a Dave Burton, Sr. a/k/a Dave E. Burton a/k/a Dave E. Burton, Sr. ("Burton") is a natural person whose business address is 21755 El Bosque Way, Boca Raton, Florida 33428. Burton solicits by mail and by an internal web site Exhibitors from all over the United States as well as Exhibitors who reside in Hillsborough County and Pinellas County, Florida to attend "A" rated hunter and jumper Recognized Horse Shows put on by or managed by Burton.

10.     David Burton a/k/a David Burton, Jr. a/k/a David E. Burton a/k/a David E. Burton, Jr. ("Burton Jr.") is a natural person whose business address is 21755 El Bosque Way, Boca Raton, Florida 33428. Burton Jr. solicits by mail and by the Internet Exhibitors from all over the United States as well as Exhibitors who reside in Hillsborough County and Pinellas County, Florida to attend "A" rated hunter and jumper Recognized Horse Shows put on by or managed by Burton Jr.

11.     Burtons and Sons, Inc. ("Burton Co.") is a Florida corporation with its principal place of business located at 21755 Bosque Way, Boca Raton, Florida 33428. Burton Co. solicits by mail and by the Internet Exhibitors from all over the United States as well as Exhibitors who reside in Hillsborough County and Pinellas County, Florida to attend "A" rated hunter and jumper Recognized Horse Shows put on by or managed by Burton Co.

12.     Littlewood Fences, Inc. ("Littlewood"), is a Florida corporation with its

4

principal place of business in Boca Raton, Florida. Littlewood solicits by mail and by the internal Exhibitors from all over the United States as well as Exhibitors who reside in Hillsborough County and Pinellas County, Florida to attend "A" rated hunter and jumper Recognized Horse Shows put on by or managed by Littlewood.

13.     The Classic Company, Ltd. ("Classic") is a South Carolina company which is in the business of managing and producing "A" rated hunter and jumper Recognized Horse Shows. Classic acts as manager of "A" rated hunter and jumper Recognized Horse Shows conducted in the Middle District of Florida. Classic further solicits by mail and the internet Exhibitors from all over the United States as well as Exhibitors who reside in Hillsborough County and Pinellas County, Florida to attend "A" rated hunter and jumper Recognized Horse Shows put on by or managed by Classic.

14.     Bob Bell ("Bell") is a natural person who acts as a manger and/or as a promoter of "A" rated hunter and jumper Recognized Horse Shows including "A" rated hunter and jumper Recognized Horse Shows conducted in the Middle District of Florida. Bell through his company, Classic, solicits by mail and by the Internet, Exhibitors who reside in the Middle District of Florida to attend "A" rated hunter and jumper Recognized Horse Shows managed and/or promoted by Bell in the Middle District of Florida and elsewhere.

15.     Kernan Hodges a/k/a Mrs. George H. Hodges, Jr. ("Hodges") is a natural person who resides in the Middle District of Florida who acts as a promoter of "A" rated hunter and jumper Recognized Horse Shows held in the Middle District of Florida.

5

16.     The events and violations of the cause of actions set forth hereinafter have occurred in the Middle District of Florida.

### Nature of Trade and Commerce

17.     The founders of the Federation first met January 20, 1917 to discuss the formation of a national regulatory body for the sport, with a consistent set of rules and standards which would guarantee that clean competition and fair play would govern the developing equestrian sport in the United States.

18.     The Federation writes and enforces its national rules ("Federation Rules") which govern the breeds and disciplines of Recognized Horse Shows. These Federation Rules not only provide a level playing field for all who compete at Recognized Horse Shows, but also protect the horses from abuse in training methods as well as in the area of drugs and medications. The Federation Rules may only be used by Federation Recognized Horse Shows. The Federation Rules may only be used by a non-recognized horse show with the Federation's prior written permission.

19.     The Federation Rules have been carefully involved in an increasingly inclusive process for more than eight (8) decades. The Federation Members are involved in hunter/jumper, dressage, eventing, reining, vaulting, endurance and driving.

20.     The Federation Rules provided for a process to hear alleged violations of the Federation Rules ("Grievances") by a hearing committee ("Hearing Committees") which hears approximately 100 Grievances a year, including 50 charges of violation of the drugs

and medication provisions contained in the Federation Rules.

21.     The Federation maintains a competition calendar ("Calendar") on  its Web Page which lists all Recognized Horse Shows.  The Calendar does not list any horse shows which are not Recognized Horse Shows.  The Federation truly does govern the heart of the equestrian sport.

22.     The Federation has a detailed marketing program which fosters Members to attend Recognized Horse Shows.  The Federation has the potential for reaching an audience of approximately thirty-three and a third (33%) of the United States households.

23.     The Federation has established national goals and encourages attainment of those goals by means of its national award and statistical programs for as many disciplines and breeds, which has as its goal to provide minimum training, development and competition opportunities for equine and human athletes in all breeds and disciplines, and seek promotion and publicizing of the athletes and horses who succeed at the highest levels.

24.     The Federation is solely responsible for providing and/or coordinating training and license of competition officials (judges, technical delegates, etc.) who participate at all levels of the sport and act as officials at Recognized Horse Shows.

25.     The Federation regulates national competitions within the United States for all its recognized breeds and disciplines.

26.     The Federation conducts through its approved Recognized Horse Shows, more than 2,800 competitions including national championships in the United States and has established procedures, embroidered within its Federation Rules for each discipline for the

determination of its eligibility for participants in such Recognized Horse Shows.  Members are more likely to attend Recognized Horse Shows than to attend non-recognized horse shows.

27.     The Federation enforces the Federation Rules which govern the breeds and disciplines.

28.     Chapter 1, Rule II of the Federation Rules in part sets forth the requirements to become a Member (Article 201 - Membership Requirements), the privileges of being a Member (Article 202 - Privileges), Member Classified (Article 203 - Membership Classification) and the cost for becoming a Member depending on the breed or discipline that a Member wished to compete in (Article 204 - Breed/Disciplines Dues").  A copy of Chapter 1, Rule II of the Federation Rules is attached as Exhibit "A."

29.     Chapter IV, entitled "Competition" of Rule II of the Federation Rules ("Competition Rules") sets forth how a Recognized Horse Show is established.  A copy of the Competition Rules is attached as Exhibit "B."

30.     Article 208 of the Competition Rules defines the different classification of Recognized Horse Shows ("Classification of Recognized Horse Shows").

31.     Article 208 of the Competition Rules sets forth the privileges of being a Recognized Horse Show ("Horse Show Privileges").  Some of the benefits to putting on a Recognized Horse Show and the benefits to Exhibitors of attending a Recognized Horse Show, including but not limited to the following:

A.      The Recognized Horse Show receives the assistance of the Federation,

8

its office, staff and records and its Hearing Committees in conducting its Recognized Horse Show;

        B.     The Recognized Horse Show has the opportunity to purchase insurance protection made available to most Recognized Horse Shows;

        C.     Exhibitors attending the Recognized Horse Show has the "assurance of the highest national standards in the sport, and the Recognized Horse Show has the ability to advertise that a competition being nationally recognized."

        D.     The Recognized Horse Show has a commitment to fair competition and the welfare of the horse which can only be provided by the Federation through the Federation Rules.

        E.     Exhibitors may compete for zone and national awards as well as the ability to compete in certain competitions only supervised by the Federation (i.e., "Medal Classes"). Exhibitors are more likely to attend Recognized Horse Shows instead of attending a horse show which is not recognized by the Federation.

        F.     The assistance of the Federation in setting high standards of competitions through access to the Federation license and experienced officials.

        G.     The assistance by the Federation in assuring that Exhibitors are financially responsible for their expenses at Recognized Horse Shows. If a Exhibitors fails to pay their bills there are provisions in the Federation Rules which assure that the Recognized Horse Show is paid or the Exhibitor is prohibited from competing at other Recognized Horse Show.

9

      H.     A Recognized Horse Show is offered reduced rates in advertising in the Horse Show Magazine.

31.     Article 210 of the Competition Rules entitled "General" sets forth how one makes an application to become a Recognized Horse Show.

32.     Article 212 of the Competition Rules entitled "Procedures" sets forth the procedures a party must follow to secure dates to hold a Recognized Horse Show.

33.     Article 214 of the Competition Rules entitled "Mileage" sets forth the limitations placed by the Federation regarding the distances between different classifications of Recognized Horse Shows ("Mileage Rule").

34.     The Mileage Rule provides that in the States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, New Jersey, New York and Pennsylvania, the Mileage Rule prohibits two "A" rated hunter/jumper Recognized Horse Shows from being held on the same dates within 125 miles of each other unless permission is given by the first horse show to become a Recognized Horse Show to the second horse show wishing to become a Recognized Horse Show.

35.     The Mileage Rule provides that in all other States other than Maine, New Hampshire, Vermont, Connecticut, Rhode Island, New Jersey, New York and Pennsylvania, "A" rated hunter/jumper horse shows must be held at least 250 miles apart unless permission is given by the first horse show to become a Recognized Horse Show to the second horse show wishing to become a Recognized Horse Show (see Mileage Rule).

36.     The Mileage Rule provides in part:

"[t]he foregoing distance rules do not apply to events comprised exclusively of classes recognized by the FEI and the USOC. Combined Training/Eventing Competitions are exempted from the mileage rule. Certain competitions held in conjunction with events also holding FEI competitions and/or selection trials for international competitions, at the discretion of the Executive Committee, may be exempted from the mileage rule."

37.     The Federation classifies Exhibitors as "Junior Exhibitors" (i.e., those individuals who have not reached their 18th birthday as of December 1st of the current competition year), Amateur Exhibitors (as defined in the Federation Rules, Articles 808 and 809) and Professional Exhibitors (as defined in the Federation Rules, Article 810).

38.     Cypress Trails has developed a horse show facility to produce "A" rated hunter and jumper Recognized Horse Shows in Hillsborough County, Florida as well as all other potential locations.

39.     It was Cypress Trails and Gallagher's intent to promote "A" rated hunter and jumper Recognized Horse Shows at which Junior Exhibitors, Amateur Exhibitors and Professional Exhibitors can compete.

40.     The Plaintiffs attempted to secure dates from the Federation to hold "A" rated hunter and jumper Recognized Horse Shows on certain dates and certain locations.

41.     During 2000, 2001, 2002 and 2003 Cypress Trails  applied for certain dates and locations to hold "A" rated hunter and jumper Recognized Horse Shows which would be recognized by the  Federation.  The Federation denied certain dates and locations which

11

> "[t]he foregoing distance rules do not apply to events comprised exclusively of classes recognized by the FEI and the USOC. Combined Training/Eventing Competitions are exempted from the mileage rule. Certain competitions held in conjunction with events also holding FEI competitions and/or selection trials for international competitions, at the discretion of the Executive Committee, may be exempted from the mileage rule."

37.    The Federation classifies Exhibitors as "Junior Exhibitors" (i.e., those individuals who have not reached their 18th birthday as of December 1st of the current competition year), Amateur Exhibitors (as defined in the Federation Rules, Articles 808 and 809) and Professional Exhibitors (as defined in the Federation Rules, Article 810).

38.    Cypress Trails has developed a horse show facility to produce "A" rated hunter and jumper Recognized Horse Shows in Hillsborough County, Florida as well as all other potential locations.

39.    It was Cypress Trails and Gallagher's intent to promote "A" rated hunter and jumper Recognized Horse Shows at which Junior Exhibitors, Amateur Exhibitors and Professional Exhibitors can compete.

40.    The Plaintiffs attempted to secure dates from the Federation to hold "A" rated hunter and jumper Recognized Horse Shows on certain dates and certain locations.

41.    During 2000, 2001, 2002 and 2003 Cypress Trails applied for certain dates and locations to hold "A" rated hunter and jumper Recognized Horse Shows which would be recognized by the Federation. The Federation denied certain dates and locations which

11

Cypress Trails applied for on the basis that the Federation had already approved another promoter those dates for locations within 250 miles of the location which Cypress Trails had applied for. The dates, locations and the conflicting promoters for the dates the Federation refused to grant are set forth on Exhibit "C" (hereinafter referred to as "Cypress Trails Refusal Dates").

42.     During 2000, 2001, 2002 and 2003 Gallagher applied for certain dates and locations to hold "A" rated hunter and jumper Recognized Horse Shows which would be recognized by the Federation. The Federation denied certain dates and locations which Gallagher applied for on the basis that the Federation had already approved another promoter those dates for locations within 250 miles of the location which Gallagher had applied for. The dates, locations and the conflicting promoters for the dates the Federation refused to grant are set forth on Exhibit "D" (hereinafter referred to as "Gallagher Refusal Dates").

43.     While the Federation has approved some of the dates that Cypress Trails and Gallagher have applied for, the Federation has denied the Cypress Trails Refusal Dates and the Gallagher Refusal Dates.

44.     The Federation refused to approve the Cypress Trails Refused Dates and the Gallagher Refused Dates on the basis of the Mileage Rule in that the Federation had previously approved these dates to other horse show promoters, including but not limited to those managed by or promoted by Burton, Burton Jr., Burton Co., Littlewood, Bell, Classic and Hodges, and other unnamed horse show promoters who were conducting "A" rated hunter and jumper Recognized Horse Shows within 250 miles of the locations which Cypress

12

Trails and Gallagher intended to conduct their "A" rated hunter and jumper Recognized Horse Shows as reflected on Exhibits C and D.

45.     Cypress Trails attempted to seek written consent of Burton, Burton Jr., Burton Co., Littlewood, Bell, Classic and Hodges and other promoters to hold its shows but such consent was not provided by Burton, Burton Jr., Burton Co., Littlewood, Bell, Classic and Hodges.

46.     The Mileage Rule is one of the most destructive forces in the horse show world today because it gives the Federation, horse show promoters and managers a virtual monopoly over the ability to hold "A" rated hunter and jumper Recognized Horse Shows. Exhibitors who either can not afford to travel or do not have the time to travel to "A" rated hunter and jumper Recognized Horse Shows may have to commute more than 250 miles to compete at a Recognized Horse Show, while there are suitable facilities to hold Recognized Horse Shows in their own communities. There is no logical explanation to support the Federation maintaining of different distance requirements in different states (i.e. 250 miles in all states excluding States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, New Jersey, New York and Pennsylvania and 125 miles in States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, New Jersey, New York and Pennsylvania).

47.     During the past few years Burton, Burton Jr., Burton Co. Littlewood, Bell, Classic and Hodges have steadily increased the number of "A" rated hunter and jumper Recognized Horse Shows. With the use of the Mileage Rule, Federation, Burton, Burton Jr., Burton Co. Littlewood, Bell, Classic and Hodges have prevented Cypress Trails and

13

Gallagher from entering into the marketplace of conducting "A" rated hunter and jumper Recognized Horse Shows.

48.     The Federation, Burton, Burton Jr., Burton Co. Littlewood, Bell, Classic and Hodges and other unnamed parties possess a dominant market power to exclude competitors conducting "A" rated hunter and jumper Recognized Horse Shows in the State of Florida.

49.     The State of Florida is one of the few States which is a peninsula which is surrounded by water on all three sides. As a result of the Mileage Rule, on a given week-end when Hodges, Classic and Bell are conducting and/or promoting "A" rated hunter and jumper Recognized Horse Shows in Green Cove Springs, Florida, and  Burton, Burton Jr., Burton Co. and Littlewood are conducting "A" rated hunter and jumper Recognized Horse Shows in Wellington, Florida, there are virtually no locations in the State of Florida that can also hold "A" rated hunter and jumper Recognized Horse Shows on the same week.  As a result of the Mileage Rule the Federation is in effect allowing promoters of "A" rated hunter and jumper Recognized Horse Shows to be grand-fathered in prohibiting Cypress Trails and Gallagher from entering into the marketplace of conducting "A" rated hunter/jumper Recognized Horse Shows.

50.     All of the Defendants acted as part of a common scheme to violate the antitrust laws which have an adverse effect on competition.

51.     The Mileage rule prohibits new promoters like Cypress Trails and Gallagher who desire to conduct "A" rated hunter and jumper Recognized Horse Shows from entering the marketplace.

52.     Cypress Trails and Gallagher are both within the sector of the economy endangered by the breakdown of competition as a result of the enforcement of the Mileage Rule.

53.     Cypress Trails and Gallagher are both the target against which the antitrust activity is directed.

54.     The above described conduct of the Defendants has caused damages to Plaintiffs' businesses since they have been unable to hold a sufficient number of "A" rated hunter and jumper Recognized Horse Shows sanctioned by the Federation on an annual basis thus eliminating and suppressing the ability of Plaintiffs' holding "A" rated hunter and jumper Recognized Horse Shows.

55.     The Defendants have deprived Plaintiffs from profits in the value of their business, which Plaintiffs would otherwise have realized.  In addition the Defendants have unreasonably restrained and impaired competition in the marketplace and the Defendants have also attempted and have conspired to obtain a monopoly and control of "A" rated hunter and jumper Recognized Horse Shows in the United States.

56.     The Mileage Rule promotes and protects inferior "A" rated hunter and jumper Recognized Horse Shows.  The Mileage Rule prohibits healthy competitions among "A" rated hunter and jumper Recognized Horse Show promoters.

57.     The Mileage Rule prohibits Exhibitors from having a choice of "A" rated hunter and jumper Recognized Horse Shows to attend in any given geographic area of 250 miles in Florida and North Carolina while in other states it is 125 miles.

15

58.     If the Mileage Rule was abolished, the quality of "A" rated hunter and jumper Recognized Horse Shows would have to improve to service and secure attendance of Exhibitors.

59.     The elimination of the Mileage Rule would tend to lessen the cost to Exhibitors who attend "A" rated hunter and jumper Recognized Horse Shows by reducing their cost of traveling as well as providing them with alternatives which would have an impact on the cost of showing horses and allow other promoters and managers to conduct "A" rated hunter and jumper Recognized Horse Shows.

60.     The Plaintiffs are competitors in the antitrust market.

61.     The Mileage Rule is a restraint of trade and impose an unreasonable restraint on competition.

62.     The Defendants possess a dominant market power which they willfully acquired and maintain.

### Count I - Sherman Act, Section 1

63.     Plaintiff realleges and incorporates paragraphs 1 through 56 as though fully set forth herein.

64.     The conduct, practice and activities of the Defendants described above constitute a combination, contract, or conspiracy between the Defendants and all are an unreasonable restraint of trade in the control of regulating "A" rated hunter and jumper Recognized Horse Shows and the Plaintiffs have suffered damages to their business or property, for which injured Plaintiffs are entitled to recover triple their actual damages, costs

16

of suit, reasonable attorney's fees, pursuant to §4 of the Clayton Act.

WHEREFORE, Cypress Trails and Gallagher respectfully pray that:

a) they be awarded their damages against the Defendants;

b) they be awarded treble their actual damages against the Defendants;

c) they are awarded injunctive relief compelling the Defendants to cease their attempts to keep the Plaintiffs from conducting "A" rated hunter and jumping Recognized Horse Shows;

d) they be awarded injunction relief compelling the Federation to award the Plaintiffs the dates which they have requested from the Federation;

e) they be awarded these costs, including reasonable attorney's fees; and

e) they are awarded such other and further relief as this Court deems just and equitable.

## Count II - Sherman Act, Section 2

65.     Plaintiff realleges and incorporates paragraphs 1 through 56 as though fully set forth herein.

66.     The conduct, practices and activities of the Defendants described above constitute a wilful acquisition and maintenance by the Defendants on the monopoly in the business of conducting "A" rated hunter and jumper Recognized Horse Shows and further constitutes a wilful attempt by the Defendants to obtain a monopoly in conducting "A" rated hunter and jumper Recognized Horse Shows, all with an attendant dangerous probability of success; and further constitute a conspiracy to monopolize the horse show industry and the

17

co-conspirators being more fully described in paragraphs herein above as well as unnamed co-conspirators, all with attendant dangerous probability of success; all in violation of §2 of the Sherman Anti-Trust Acts; pursuant to which Plaintiffs have suffered damages to their business for which injury Plaintiffs are entitled to recover triple their actual damages, costs of suit, and reasonable attorneys' fees, pursuant to §4 of the Clayton Act.

WHEREFORE, Cypress Trails and Gallagher respectfully pray that:

a) they be awarded their damages against the Defendants;

b) they be awarded treble their actual damages against the Defendants;

c) they are awarded injunctive relief compelling the Defendants to cease their attempts to keep the Plaintiffs from conducting "A" rated hunter and jumping Recognized Horse Shows;

d) they be awarded injunction relief compelling the Federation to award the Plaintiffs the dates which they have requested from the Federation;

e) they be awarded these costs, including reasonable attorney's fees; and

e) they are awarded such other and further relief as this Court deems just and equitable.

## Count III - Clayton Act, Section 7

67.     Plaintiff realleges and incorporates paragraphs 1 through 56 as though fully set forth herein.

68.     The conduct, practices and activities of the Defendants described above . constitute violations of §7 of the Clayton Anti-Trust Act, in that the Defendants' control of

"A" rated hunter and jumper Recognized Horse Shows dates have the likelihood of substantially lessening competition, and in fact did substantially lessen competition, in the management of "A" rated hunter and jumper Recognized Horse Shows. As a proximate result of such violations, Plaintiffs have sustained damages to their business, for which injury Plaintiffs are entitled to recover triple their actual damages, costs of suit, reasonable attorney's fees, pursuant to §4 of the Clayton Act.

WHEREFORE, Cypress Trails and Gallagher respectfully pray that:

a) they be awarded their damages against the Defendants;

b) they be awarded treble their actual damages against the Defendants;

c) they are awarded injunctive relief compelling the Defendants to cease their attempts to keep the Plaintiffs from conducting "A" rated hunter and jumping Recognized Horse Shows;

d) they be awarded injunction relief compelling the Federation to award the Plaintiffs the dates which they have requested from the Federation;

e) they be awarded these costs, including reasonable attorney's fees; and

e) they are awarded such other and further relief as this Court deems just and equitable.

19

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury of all issues so triable.

Robin S. Trupp, Esquire
Florida Bar No. 314528
Robin S. Trupp, P.A.
300 S. Hyde Park Avenue
Suite 180
Tampa, FL 33606
(813) 259-9964
Facsimile: (813) 259-9724
Attorney for Plaintiffs
Trial Counsel

# RULE II. MEMBERSHIP

## CHAPTER I. MEMBERSHIPS.

**Article 201. Membership Requirements.**
To be eligible to participate as a rider, driver, handler, owner, lessee, agent, coach or trainer at Regular Competitions, Eventing Competitions at the Preliminary Level or above, Dressage Competitions, Combined Driving Competitions at the Advanced Level and above, Endurance Rides and Vaulting Competitions, persons must be Members of the Federation as provided by the Constitution, Art. III, Sec. 2 & 3, and have paid the respective Breed/Discipline Dues as stated herein (for exceptions see Art. 1401.9). If non-members, participants must pay a non-member registration fee and pay a Breed/Discipline registration fee. Lessees are considered owners in connection with this membership requirement. In the event of an entry under multiple ownership, only one owner need be a Member and pay the respective Breed Discipline Dues or pay a non-member registration fee and Breed/Discipline registration fee. *BOD 1/13/02 Effective immediately upon notification BOD 1/13/02 Effective 3/1/02*

**Article 202. Privileges.** Privileges for Members (except Contributing and Individual Group Members) include the following:
1. eligibility to participate as a rider, driver, handler, owner, lessee, agent, coach or trainer at Regular Competitions, Eventing Competitions at the Preliminary Level or above, Dressage Competitions, Combined Driving Competitions at the Advanced Level or above, Endurance Rides and Vaulting Competitions (see Art. 204 and Art. 801.2); *BOD 1/13/02 Effective immediately upon notification BOD 1/13/02*
2. eligibility to become a recognized USA Equestrian and FEI judge (see Rule X);
3. eligibility to become a recognized Federation steward, technical delegate and course designer (see Rule X and Rule XI);
4. eligibility to compete for Horse of the Year Awards (see Art. 811 and Rule IX);
5. eligibility to compete in international competitions (see Art. 807);
6. eligibility of Junior Active members to compete in USA Medal classes (see Arts. 2205 and 2206);
7. eligibility to compete in USA Equestrian/USDF Qualifying and Championship Classes;
8. eligibility to compete in USA Adult Equitation classes;
9. a free copy of the Rule Book;
10. a subscription to EQUESTRIAN, official publication of the Federation; *EC 10/2/01 Effective 12/1/01*
11. free amateur certification for Senior Active and Life Members, if qualified;
12. members receive automatic insurance coverages and have the opportunity to participate in additional group insurance programs;
13. corporate discount offerings from participating sponsors.

**Article 203. Membership Classifications.**
All Life, Senior Active and Junior Active Members of the Federation shall designate a primary breed/discipline affiliation upon joining or must do so annually upon renewing. A member will be deemed to continue his or her primary designation unless prior to the record date (November 30 of each year) such Life Member notifies the Federation in writing of change. This shall be considered the member's affiliation for the purpose of allocating Voting Director seats as provided in Article VI of the Constitution.
1. Life Members. Life Members are Senior Active Members who attain Life Membership upon a single payment of $2,500. Life Members shall have all rights and privileges of Members and be subject to all liabilities and penalties which may be imposed upon Members but shall be exempt from annual dues and assessments and are Breed/Discipline Platinum Members.
2. Senior Active Members. Senior Active Members are those Members who are at least 18 years of age. Their annual dues are $40. Senior Active Members shall be sent notice of and shall be entitled to attend the Annual Meeting of the Federation.
3. Junior Active Members. Junior Active Members are those Members who have not reached their 18th birthday as provided for in Art. 116. Their annual dues are $35.



1

4. Contributing Members. Contributing Members are those individuals who do not desire to participate in USA Equestrian Recognized Competitions. Their annual dues are $25. Their privileges are limited to a quarterly subscription to EQUESTRIAN magazine that includes the December/January, April, July/August, and October issues, a discount on the purchase of a USA Equestrian Rule Book, corporate discount offerings from participating sponsors and the ability to upgrade to a membership category with competition privileges. *EC 10/2/01 Effective 12/1/01*

5. Individual Group Member. Individual Group Members are members of a Recognized Affiliate Association Member or Council or Council Board of Governors of the Federation that has applied for and been approved to offer a Federation Group Program to its membership. Individual Group Members are eligible to compete in USA Equestrian Endorsed competitions and will receive a discount on the purchase of a USA Equestrian Rule Book.

6. Membership is effective the date the correct application and fees are received in the Federation office. Exemption: Applications for USA Equestrian Individual Membership submitted at recognized Competitions are considered effective on the date the application and dues are received by the Competition Secretary provided the application is signed and dated by the Competition Secretary and the Competition Steward/TD on that same day. For applications received on or after September 1 of the competition year, the Federation will provide a $10. discount for the following year's renewal, provided the renewal is for a Senior Active or Junior Active Membership. *BOD 11/13/01 Effective 12/1/01*

7. A duplicate membership card will be issued for a fee of $10.

    **Article 204. Breed/Discipline Dues.** In order to compete in divisions of recognized competitions, Senior Active Members of the Federation must pay the Breed/Discipline Dues or the Breed/Discipline category fee established annually by the Federation. Junior Active Members of the Federation and non-US citizens who are members in good standing of their National Federations are exempt from paying Breed/Discipline Dues. Unless otherwise established, the dues shall be as stated below: *BOD 1/14/01 Effective Immediately*

| | |
|---|---|
| 1. Platinum | $45 |
| (allows unlimited participation in all divisions of the Federation) | |
| 2. Arabian/NSH | $10 |
| 3. Driving | $10 |
| 4. Hunter/Jumper | $35 |
| 5. Morgan | $10 |
| 6. Western/Reining | $20 |
| 7. Saddle/Hack/Road/Par/Shet | $13 |
| 8. Dressage | $13 |
| 9. Eventing | $13 |

(Members of the USEA may upon proof of membership participate in the Hunter/Jumper and Dressage Divisions of the Federation, provided the Eventing Breed/Discipline dues have been paid).

| | |
|---|---|
| 10. Welsh/Connemara | $10 |
| 11. Paso Fino | $10 |
| 12. Vaulting | $10 |
| 13. Endurance | $10 |
| 14. Andalusian/Lusitano | $13 |

2

2. The amount of the Breed/Discipline category fee will be established annually by the Federation. Unless otherwise established the fee will be $5. and must be collected by the appropriate competitions and remitted to the Federation. Junior non-members of the Federation and non-US citizens who are members in good standing of their National Federations are exempt from payment of the Breed/Discipline category fee *BOD 1/14/01 Effective immediately*

## CHAPTER IV. COMPETITIONS.

### Article 208. Classifications.

1. Recognized Competitions may be classified as Regular Competitions, Local Competitions, Eventing Competitions, Dressage Competitions, Dressage/Eventing Competitions, Driving Competitions, Endurance Competitions, Vaulting Competitions and Honorary Competitions. An Honorary Competition is a show held in another country which has been elected to this classification by the Federation but does not enjoy any of the privileges of Recognized Competitions. (See Constitution, Art. III, Sec. 4). *EC 7/23/01 Effective immediately*

After written application to the Executive Committee at least six months prior to an event, a competition may be approved for Special Competition status upon majority vote of the Executive Committee. To be considered, a competition must list on the application all information requested including the names of competition management if not already registered with the Federation. A $500. non-refundable processing fee must be submitted with the application. A Special Competition is an event which does not meet fully the requirements for obtaining Federation recognition, however, it has been deemed in the best interest of the exhibitors, the breed/discipline and the Federation that the event be granted Recognized status. Special Competition status includes but is not limited to Olympic Games or Trials, PanAm Games or Trials, World Equestrian Games or Trials, World Cup Finals, USA Equestrian National Finals and National Championships and other events created for the benefit of the exhibitor and breed/discipline approved by the majority vote of the breed/discipline Affiliated Association, the USA Equestrian breed/discipline committee and by the Executive Committee. In acting upon the application, the Executive Committee may or may not take into consideration the Event's possible effect upon other applications. The application must specify which Federation rules cannot be met. Competition dues are to be assessed based on prize money offered. Approval, if granted, is for one year only. Management is required to re-apply for future competitions. The Executive Committee may place additional conditions upon an approval in any matter it deems appropriate. All Federation rules other than those for which an exception has been made must be enforced. *BOD 1/14/01 Effective immediately*

2. Divisions and sections of Regular Competitions are classified A, B, or C for the purpose of reckoning points toward the USA Equestrian Annual Horse of the Year Awards. (Exception: Jumper Division, see Art. 906.)

3. Divisions and sections of Local, Dressage, Driving Competitions, Endurance Competitions and Vaulting Competitions are not rated.

4. USA Equestrian Endorsed Competitions, Divisions, or Levels. Those events receiving approval pursuant to the USA Equestrian Constitution, Article III, Sec. 1 J.

5. Levels of Eventing Competitions are rated C for one and two-day events, B for three-day events.

### Article 209. Privileges. Recognized Competitions enjoy privileges not available to other competitions including:

a) a position on the Federation schedule of competition dates;

b) assistance of Federation Committees, including Division and Hearing Committees and the facilities and assistance of the Federation office, staff and records;

c) the privilege of holding International Competition;

d) the opportunity to purchase insurance protection made available to most Federation competitions;

e) subscription to EQUESTRIAN, the official publication of the Federation. *EC 10/2/01 Effective 12/1/01*



f) assurance of the highest national standards in the sport, and the ability to advertise that a competition is nationally recognized. *BOD 1/13/02 Effective 3/1/02*

g) a commitment to fair competition and the welfare of the horse which can only be provided by the Equestrian Federation of the United States through its rules and their firm enforcement, based on decades of legal precedent; *BOD 1/13/02 Effective 3/1/02*

h) through those rules, the Federation's Drugs and Medications Program, bringing the world's highest standard of research and testing to the sport. *BOD 1/13/02 Effective 3/1/02*

i) attraction to an event of horses and riders properly registered with the Federation to compete for Zone and National awards, as well as other competitions supervised by USA Equestrian, such as its Medal classes; *BOD 1/13/02 Effective 3/1/02*

j) assistance of the Federation to set high standards of competition through access to licensed and experienced officials, and in assuring financial responsibility of entrants *BOD 1/13/02 Effective 3/1/02*

k) reduced rates for advertising in Equestrian magazine, the official magazine of American Equestrian sport since 1937 *BOD 1/13/02 Effective 3/1/02*

l) provide non-exclusive licenses to the Federation's recognized and endorsed competitions and events to perform, present or cause the live and recorded performance of all non-dramatic renditions of the separate musical compositions in the ASCAP and BMI repertories *BOD 1/13/02 Effective 3/1/02*

**Article 210. General.**
1. Applications for competition dates of Recognized Competitions must be made on the form provided by the Federation. The forms must be signed by an officer of the Recognized Competition requesting the date and shall contain the following statement: In applying for the above dates, this competition agrees to abide by the rules of the Federation and understands that failure to do so constitutes a violation of the rules which may subject the competition to penalty under the provisions of Art. 706.
2. The Competition Management (see Art. 126) must be registered with the Federation in order to receive approval to hold a USA Equestrian Recognized Competition. Registration must be made on the form provided by the Federation. Once registered, it is the sole responsibility of Competition Management to update the registration to reflect any changes
3. Holding a competition on a date(s) other than that approved shall constitute a violation of the rules unless a request to change the date(s) is received in the Federation's office at least 30 days prior to the competition and permission is duly given.
4. Holding a competition at a location other than as stated on the date application shall constitute a violation of the rules unless a request to change the location is received in the Federation's office at least 60 days prior to the competition date and permission is duly given.
5. Failure to obtain the permission of the Federation at least 30 days prior to the competition to add a division, not offer an approved division or change the rating of an approved division, may constitute a violation of the rules.
6. A USA Reining Seat Medal Class may be held at a non USA Equestrian Recognized Competition. A $10. per rider fee must be made payable to the Federation. The class must be judged by a Federation judge or a judge licensed by a Recognized National Breed Association or the NRHA. This class is to be judged in accordance with USA Equestrian Rule XXII Chapter IV. For approval of this class, the Breeds/ Western Discipline Dept. must be contacted in writing and a $25. application fee must be sent to the Federation

**Article 211. Agreement.** All applications for Federation recognition are accepted with the explicit agreement of competition officials that all classes (rated or unrated) to be held on a USA Equestrian recognized date must be recognized by the Federation and are governed by all applicable Federation rules, and that no unrecognized classes will be held on any date for which Federation recognition is requested, except that: (1) levels of Horse Trials (Eventing Competitions) below the Preliminary level, Combined Tests (Eventing Competitions) at all levels, and levels of Combined Driving below the Advanced Level, (2) classes for draft horses, (3) classes for miniature horses, (4) levels of Vaulting for which the Federation does not have division rules and (5) classes recognized by a national breed or discipline association and for which the Federation does not have division rules, can be unrecognized, only provided a separate entry blank is used and the prize list and/or Omnibus clearly states

that the classes are not recognized by the Federation. Exception: FEI rules take precedence over National rules at all FEI Sanctioned Competitions. *BOD 1/13/02 Effective 3/1/02*

**Article 212. Procedures.**

1. The comparable dates of established Recognized Competitions will not be awarded in subsequent years to other competitions within the distances set forth below provided that applications for December, January, February and March competition dates in the following competition year are received in the Federation's office by April 15 and applications for April through November competition dates in the following competition year are received in the Federation's office by May 15. Applications for new and established competitions will be accepted starting April 1 of the year preceding the competition date in question; all applications received prior to that date will be considered received as of April 1. Applications for competitions unable to be approved for any reason including mileage conflicts, or incomplete information on the application, will be sent written notification by the Competition Dates Department and held for a period of 30 days from the date of that notification to allow the competition in question to submit the information required, seek alternative dates, make other amendments, or submit written permission from the competition in conflict, as applicable. At the end of the 30 day period, if the application has not been completed or the 30 day period extended by the Competition Dates Department, the application will be considered to have been withdrawn and the dues will be refunded. Except as provided herein, there will be no holding of applications or dues, and applicants must reapply from year to year. *BOD 1/13/02 Effective 4/1/02*

2. If two or more applications for the same date(s) are made by new competitions within the applicable distances specified in this rule or by two or more Recognized Competitions seeking to upgrade from a lower to a higher rating, only the application first received will be approved, provided all other requirements for recognition are met; any applications timely received from an established Recognized Competition seeking to upgrade its rating shall be accorded precedence over any conflicting applications made by new competitions regardless of the time of their receipt. If an application is received from an established competition seeking to change its dates which conflict with an application received from a new competition, only the application first received will be approved. If an application is received from an established competition seeking to change location and an application is received from a new competition which conflicts with the application of the established competition, the application of the established competition will be accorded preference if approval has not yet been issued to the new competition. Should applications from two established competitions be received by the appropriate deadline requesting to change dates which conflict, the application first received will be approved. Should applications for conflicting dates submitted by two or more new competitions, or by two or more Recognized Competitions seeking to upgrade from a lower to a higher rating be received on the same date, priority will be established by lot, drawn in the Federation office in the presence of representatives of all interests involved. Applications received on the same date will be considered as having been received at the same time.

3. Competition or competition dates begin at 12:01 AM on the calendar date on which the first class is scheduled and end on the calendar date on which the last class is scheduled.

4. An application accompanied by appropriate fees to hold a Regular Competition or Dressage Competition must be received in the Federation's office at least sixty days prior to the date(s) requested; an application accompanied by appropriate fees for a Local Competition or Driving Event must be received thirty days prior, and an application accompanied by appropriate fees for an Eventing Competition must be received ninety days prior, an application accompanied by appropriate fees to hold an Endurance Event or Vaulting Competition must be received 45 days prior, and an application accompanied by appropriate fees for a Hunter Breeding competition must be received ninety days prior to the dates requested.

5. It shall be in order for the Federation to withhold the allotment of a date to a Recognized Competition which has indebtedness recognized by the Federation.

6. Applications for new competitions must be sent certified mail, and post-marked on or after April 1 of the year preceding the competition date in question and must be received by the date specified by Art. 212.4. Applications that are postmarked or are received prior to the

April 1 date will be considered to have been received on April 1. Any applications for new competitions which are not made in accordance with the above will be returned and not considered. If the date applied for is available and more than one eligible application is received post-marked on the same date, then the lottery procedures outlined in Art. 212.2 will be followed.

### Article 213. Disputes.

1 A request for the initiation of a formal date and/or rating dispute must be accompanied by the nonrefundable fee of $750   *BOD 1/13/02 Effective 4/15/02*

2. Competition date or rating applications and disputes regarding the same are to be decided by the Executive Director of the Federation in the first instance. The Executive Director shall provide parties affected by the application, rating or dispute the opportunity to be heard pursuant to written submissions only and he/she shall issue a written decision containing his/her findings, conclusions and ruling by mailing the same to the affected parties.

3. Within ten (10) days following the mailing of the Executive Director's decision, a party may make written appeal of the Executive Director's ruling to the members of the Executive Committee, setting forth the grounds therefor based solely upon the record; the other affected parties will have ten (10) days thereafter within which to respond in writing to the appealing party's statement; such submissions shall be made by mailing the same and a non-refundable fee of $500 to the Secretary of the Executive Committee at the Federation's Lexington, KY office and by mailing copies of the same to the other affected parties *BOD 1/14/01 Effective immediately BOD 1/13/02 Effective 4/15/02*

4. The members of the Executive Committee will review the record consisting of the Executive Director's written decision and all of the written submissions made by the parties. The majority vote of the responding Executive Committee Members shall be final; in this respect, written or telephoned responses received by the Federation office from a quorum of the members of the Executive Committee shall constitute sufficient responses for the matter to be decided.

5. Upon the filing, in good faith, by the Executive Director or by any affected party, within the above time periods specified for the submission of an appeal, of an affidavit alleging personal bias or other disqualification of an Executive Committee member, upon consideration of the appeal, the Executive Committee members shall also vote as to whether the challenged member's vote shall be counted; in this regard, the vote of any Executive Committee member having a pecuniary interest in any party, or serving in a managerial capacity with respect to any party, shall not be counted, except that a member may not be disqualified from voting for serving merely as a paid competition official for a party, such as steward, course designer or judge.

### Article 214. Mileage.

1. Group 1. The distances between Recognized Competitions held in ME, NH, VT, MA, CT, RI, NJ, NY, and PA which offer hunter or jumper divisions or sections shall be as follows:

125 mile radius for competitions with any of the same A rated sections, or unrated Jumper sections and classes with total prize money of $10,000. or more. *BOD 1/14/01 Effective 4/15/01 for 2002 Competition Year*

90 mile radius for one competition with A rated sections and one with any of the same B rated sections.

75 mile radius for competitions with any of the same B rated sections.

50 mile radius for competitions with any of the same C rated sections or one with A or B rated sections and one with any of the same C rated sections.

40 mile radius for competitions with A, B or C rated sections and Local Competitions. 40 mile radius for Local Competitions.

In the case of a Regular or Local Competition holding "open" Dressage Division classes, the question of conflict shall be determined with reference only to those dates, inclusive, during which "open" dressage classes are to be held.

50 mile radius for Dressage Competitions in USDF Regions 1, 2, 6 and 8 (excluding competitions restricted to one breed), and 100 mile radius for Dressage Competitions in USDF Regions 3, 4, 5, 7 and 9 (excluding competitions restricted to one breed). See Art 1927.13 for a map of USDF regions. *BOD 1/14/01 Effective 4/15/01 for 2002 Competition Year*

7

The distances between competitions held on Long Island, NY, and competitions held on the mainland shall be determined by measuring a straight line distance from the point at which Interstate Highway 278 (across the Triborough Bridge) intersects the shore of Long Island, to the center of that city, town, village or community appearing on the map which is located closest to the actual Long Island competition location, and by measuring the mile radius from the bridge to the center of that city, town, village or community appearing on the map which is located closest to the actual competition location on the mainland.

2. Group 2. The distances between all other Recognized Competitions, including divisions other than hunter and jumper offered in competitions held in those states in Group 1, shall be as follows:

250 mile radius for competitions with any of the same A rated sections, or unrated Jumper sections and classes with total prize money of $10,000. or more. *BOD 1/14/01 Effective 4/15/01 for 2002 Competition Year*

200 mile radius for one competition with A rated sections and one with any of the same B rated sections.

150 mile radius for competitions with any of the same B rated sections.

100 mile radius for competitions with any of the same C rated sections or one with A or B rated sections and one with any of the same C rated sections.

75 mile radius for competitions with A, B or C rated sections and Local Competitions    50 mile radius for Local Competitions.

50 mile radius for Dressage Competitions in USDF Regions 1, 2, 6 and 8 (excluding competitions restricted to one breed), and 100 mile radius for Dressage Competitions in USDF Regions 3, 4, 5, 7 and 9 (excluding competitions restricted to one breed). See Art. 1927.13 for a map of USDF regions. In the case of a Regular or Local Competition holding "open" Dressage Division classes, the question of conflict shall be determined with reference only to those dates, inclusive, during which "open" dressage classes are to be held *BOD 1/14/01 Effective 4/15/01 for 2002 Competition Year*

For Group 1 (except Long Island) and Group 2: In any instance where road mileage between the centers of two communities located closest to actual competitions is greater than one and one half (1 1/2) times the radial mileage between the centers of those two communities, the required mile distances between competitions listed above in Art 214. 1 and .2 shall be based upon the road mileage rather than radial mileage.

3. In the case of competitions held in contiguous states for which different distances are specified above, the greater of the specified distances shall apply, except between Zone 2 and Zone 3 where the lesser of the specified distances shall apply. In the case of Dressage Competitions, or Regular or Local Competitions holding "open" Dressage Division classes, a 75 mile radius will apply to competitions held in contiguous regions for which different distances are specified above. *BOD 1/14/01 Effective 4/15/01 for 2002 Competition Year*

4. To determine a mile radius, the distance shall be measured using a map drawn to scale by AAA, Rand McNally, or the USGS, or by using USGS approved software, from the center of that city, town, village or community appearing on the map which is located closest to the actual competition location (except between Long Island and the mainland). *BOD 1/14/01 Effective immediately*

5. If the terms of the foregoing distance rules create a conflict of dates between Recognized Competitions existing prior to December 1, 1987, each competition so affected may retain its comparable dates provided all other requirements for recognition are met.

6. If the mileage between competitions is less than the applicable distance specified by this rule, conflicting dates will be approved provided all affected competition managements agree in writing to waive the mileage requirements and all other requirements for recognition are met.

7. New competitions offering "A" rated hunter or jumper divisions or sections will not be recognized on dates conflicting with those of any other Recognized Competition within the applicable distance specified by this rule which offers A rated hunter or jumper divisions or sections, regardless of class scheduling. In the case of a multi-breed or multi-discipline competition, a question of conflict shall be determined with reference only to those dates, inclusive, during which hunter or jumper divisions or sections are to be held  The mileage restrictions set forth in Art. 214.1, 214.2 and 214.3 will not prevent two competitions from being approved if the two competitions have different competition managements and the

competition with priority gives written permission, to be renewed annually, and the mileage distance between competitions is at least 10 miles. *BOD 1/14/01 Effective 4/15/01 for 2002 Competition Year*

8. The foregoing distance rules do not apply to events comprised exclusively of classes recognized by the FEI and the USOC. Eventing Competitions are exempt from the mileage rule  The National Championships for Dressage, and Dressage Competitions offering USET qualifying or selection trials, or observation classes and National classes held in conjunction with a CDI are exempted from the mileage rule. Certain competitions held in conjunction with events also holding FEI competitions and/or selection trials for international competitions, at the discretion of the Executive Committee, may be exempted from the mileage rule

9. Two or more Dressage Competitions may never be held at the same or adjacent locations on the same days.

**Article 215. Dues, Fees and Insurance.**

1. No competition dates will be assigned to Competition Management (see Art. 126) which has not paid dues, fees or fines owing to the Federation with respect to any past Recognized Competitions. Any competition and/or competition management which makes payment for fees to the Federation which is not negotiable will be notified by mail by the Secretary of the Federation of their indebtedness and warned that unless settlement is made within two weeks, the competition and its management will automatically be fined the sum of $500  to be paid to the Federation in addition to the amount of the non-negotiable payment  Upon payment of the fine and indebtedness, said fine may be appealed to the Federation's Executive Director provided a written request giving the reasons for the appeal is received with the payment of the fine.

2. The annual dues for each Regular Competition are based upon the cash premiums offered, except as hereinafter provided. The monies received from exhibitors in the form of entry fees for distribution in sweepstakes are excluded in figuring the premiums offered  The dues for any current year shall be based upon the amount of the premiums to be offered in the current prize list or estimated from the previous year's prize list (minimum dues are acceptable with date application for Regular Competitions, i.e., $150 ) *BOD 1/14/01 Effective 3/15/01 for 2002 Competition Year  EC 7/23/01 Effective immediately*

3. Regular Competition Dues

| Premiums | Dues |
|---|---|
| none to $500 | $150 |
| $501 to $2,000 | $175 |
| $2,001 to $5,000 | $225 |
| $5,001 to $8,000 | $275 |
| $8,001 to $10,000 | $450 |
| $10,001 to $25,000 | $550 |
| $25,001 to $50,000 | $650 |
| $50,001 to $100,000 | $750 |
| Over $100,000 | $850 |

*BOD 1/14/01 Effective 3/15/01 for 2002 Competition Year*

4. The annual dues for each Local Competition (non-Hunter/Jumper) are $75 , except Open Western Division competitions that shall pay $50. The annual dues for each Local Competition (Hunter/Jumper) are $100.

5. The annual dues for each Eventing Competition are $30.

6. The annual dues for each Dressage Competition are $75.

7. The annual dues for each Driving Competition are $30.

8. The annual dues for each Endurance Competition are $30.

9. The annual dues for each Vaulting Competition are $30.

10. A fee of $50. will be charged to any Regular, Local, Dressage, or Eventing/Dressage Competition which applies for a change of location.

11. A fee of $25. will be charged to any Recognized Competition which applies for a change in its name.

12. A fee of $50. will be charged to any Recognized Competition which applies for a change of date.

13  A fee of $25 will be retained from the minimum competition dues submitted with any competition application that is unable to be approved and its application is subsequently withdrawn  *BOD 1/13/02 Effective 4/15/02*

14  A certificate of insurance for each competition must be received by the Federation office at least fourteen calendar days prior to the competition by mail with proof of delivery or submitted electronically via e-mail, or via fax. Competitions faxing their certificate of insurance to the Federation must retain a copy of the fax confirmation  If the certificate is not received fourteen days prior to the competition, insurance coverage will be acquired through Equisure and the competition invoiced as outlined in Art.215.15. Each certificate must name the Federation as additional insured for each day of the competition, including set-up and take-down days, with minimum limits of $1,000,000. third party general liability insurance and $50,000. on equipment and property.  Competitions failing to provide proof of such coverage (or such coverage to the extent permitted by local law) will automatically be enrolled in the Equisure policy for competitions and will then be invoiced the then prevailing premium for such insurance. Competitions outside the United States must provide evidence of equivalent coverage of such insurance and will not be enrolled in the Equisure group policy. *EC 7/22/02 Effective immediately upon notification EC 8/15/02 Effective immediately upon notification*

15  An automatic fine of $100. will be imposed on any competition for which evidence of adequate insurance is not received at least two weeks prior to the competition. The fine is in addition to the amount of the invoice for the automatic enrollment in the Equisure policy  A competition disputing that the invoice and/or the fine is properly owing may appeal in writing to the Federation within 30 days of management's receipt of the Federation's notice of billing and/or fine, specifying the grounds for the appeal. The Federation's Executive Director, a special committee appointed by the president or the Hearing Committee will consider the appeal and may waive part or all of the billing and/or fine upon a finding of good cause why the evidence of insurance was not timely filed and/or a finding that extreme hardship results from the automatic penalty.

16  Any competition which has not registered for approval in the open western and/or stock seat division by February 1, 1998 shall have all competition dues in said divisions waived. In addition all new members applying at these competitions for the open western/stock seat division(s) will have the discipline fee for said division(s) waived. Any non-member competing at said competitions in the open western/stock seat division(s) will have said discipline fee waived. This program will be in effect for a three year period or until 75 open western competitions are approved, whichever comes first. After the 3 year period concludes and if 75 open western competitions have not been approved, this proposal will be brought up for review.

**Article 216. Cancellation of Competitions.**

1.  If a Recognized Competition cancels by furnishing the Federation written notice of cancellation at least 60 days prior to the first day of the competition, 75% of competition dues will be refunded. If less than 60 days notice is given, no refund will be allowed.

2.  Competitions that do not furnish USA Equestrian written notice of cancellation at least 60 days prior to the first  day of the competition will be responsible for the original application fee, plus a penalty fee equal to that of their minimum competition dues  unless the cancellation is due to an act of God  *BOD 1/13/02 Effective 4/1/02*

3  Cancellation of a Recognized Competition for two consecutive years for other than acts of God will constitute a relinquishment by competition management of the comparable dates of the canceled competition. *EC 6/18/02 Effective immediately upon notification*

4  Competitions declaring cancellation due to an Act of God must provide written documentation, such as newspaper articles or photographs of the extenuating circumstances, absent severe and unusual circumstances, such as hurricane winds, floods, tornadoes, or blizzards, weather conditions shall not be considered Acts of God, whether or not a cancellation is due to an Act of God shall be decided by the Executive Director in the first instance subject to review and approval by the Executive Committee upon written demand

**Article 217. Inactive Competitions.**

1. Any Recognized Competition held within the previous two competition years which notifies the Federation by 120 days prior to its competition date that it will not hold a competition the following year, may retain Inactive Membership by the additional payment of $75 for that year.

2. An Inactive competition remains on the Federation mailing list and will have its dates held by the Federation for the following year only, providing that application is made for comparable dates at the same location at which the competition was last held and that the application is received along with estimated dues by the deadline.

## CYPRESS TRAIL FARM

| "A" Date Denied | Conflicting Show | Status |
|---|---|---|
| 11/28-12/1/02 | Stadium Jumping Fall Classic<br>Wellington, Florida<br>Mary Silcox, Stadium Jumping, Inc.<br>1301 6th Avenue W, Suite 406<br>Bradenton, Florida 34205<br>(941) 744-5465 | Denial received 7/20/02 -<br>Denied due to mileage<br>conflict - 178 miles |
| 12/12-14/02 | Christmas Festival<br>Wellington, Florida<br>Mary Silcox, Stadium Jumping, Inc.<br>1301 6th Avenue W, Suite 406<br>Bradenton, Florida 34205<br>(941) 744-5465 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 178 miles |
| | RMI Mid-Florida December<br>Newberry, Florida<br>Mr. John Rush III<br>2908 W. Bayshore Court<br>Tampa, Florida 33611<br>(813) 831-4986 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 100 miles |
| 12/26-29/02 | Littlewood Farm New Years<br>Wellington, Florida<br>Mr. Dave Burton Sr.<br>21755 El Bosque<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 178 miles |
| 1/2-5/03 | Littlewood Farm/A-T Children's Benefit<br>Wellington, Florida<br>Mr. Dave Burton Sr.<br>21755 El Bosque<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 178 miles |



| | | |
|---|---|---|
| 1/9-12/03 | Littlewood Farm Midcircuit<br>Wellington, Florida<br>Mr. Dave Burton Sr.<br>21755 El Bosque<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 178 miles |
| | Jacksonville Winter Premiere<br>Green Cove Springs, Florida<br>Mrs. George H. Hodges, Jr.<br>Post Office Box 16771<br>Jacksonville, Florida 32245<br>(904) 655-1657 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 136 miles<br>(Application pending<br>approval) |
| 1/16-19/03 | Littlewood Farm Midcircuit<br>Wellington, Florida<br>Mr. Dave Burton Sr.<br>21755 El Bosque<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 178 miles |
| | Jacksonville Winter Premiere<br>Green Cove Springs, Florida<br>Mrs. George H. Hodges, Jr.<br>Post Office Box 16771<br>Jacksonville, Florida 32245<br>(904) 655-1657 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 135 miles<br>(Application pending<br>approval) |
| 1/23-26/03 | Nutrena Wellington Classic<br>Wellington, Florida<br>Mr. Mary K. Silcox<br>Stadium Jumping, Inc.<br>1301 Sixth Avenue West, Suite 406<br>Bradenton, Florida 34205<br>(941) 744-5465 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 178 miles |
| | Jacksonville Winter National<br>Green Cove Springs, Florida<br>Mrs. George H. Hodges, Jr.<br>Post Office Box 16771<br>Jacksonville, Florida 32245<br>(904) 655-1657 | Denial received 7/20/02-<br>Denied due to mileage<br>conflict - 135 miles<br>(Application pending<br>approval) |

| | | |
|---|---|---|
| 1/30-2/2/03 | Littlewood Circuit Finale<br>Wellington, Florida<br>Mr. Dave E. Burton, Sr.<br>21755 E. Bosque Way<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denial received 7/20/02 -<br>Denied due to mileage<br>conflict - 178 miles |
| | Ocala Winter Premiere<br>Ocala, Florida<br>Mr. Thomas G. Struzzieri<br>319 Main Street<br>Saugerties, New York 12477<br>(845) 246-8833 | Denial received 7/20/02 -<br>Denied due to mileage<br>conflict - 74 miles |
| | Jacksonville Winter A to Z<br>Green Cove Springs, Florida<br>Mrs. George H. Hodges Jr.<br>Post Office Box 16771<br>Jacksonville, Florida 32245<br>(904) 655-1657 | Denial received 7/20/02 -<br>Denied due to mileage<br>conflict - 135 miles<br>(This Application pending<br>approval) |
| 4/17-20/03 | Littlewood Spring 6<br>Wellington, Florida<br>Mr. Dave E. Burton, Sr.<br>21755 E. Bosque Way<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denial received 7/18/02 -<br>Denied due to mileage<br>conflict - 178 miles |
| | RMI Mid-Florida<br>Ocala, Florida<br>Mr. John Rush III<br>2908 W. Bayshore Court<br>Tampa, Florida 33611<br>(813) 831-4986 | Denial received 7/18/02-<br>Denied due to mileage<br>conflict - 74 miles |
| 5/15-18/03 | RMI Mid Florida III<br>Ocala, Florida<br>Mr. John Rush III<br>2908 W. Bayshore Court<br>Tampa, Florida 33611<br>(813) 831-4986 | Denial received 7/18/02-<br>Denied due to mileage<br>conflict - 74 miles |

| | | |
|---|---|---|
| 10/17-19/03 | Littlewood Fences, Inc. Fall "A" Circuit II<br>Wellington, Florida<br>Mr. David Burton, Jr.<br>22439 Overture Circle<br>Boca Raton, Florida 33428<br>(561) 239-5270 | Denial received 8/6/02- Denied due to mileage conflict - 178 miles |
| 10/22-26/03 | Littlewood Fences, Inc. Fall "A" Circuit II<br>Wellington, Florida<br>Mr. David Burton, Jr.<br>22439 Overture Circle<br>Boca Raton, Florida 33428<br>(561) 239-5270 | Denial received 8/6/02- Denied due to mileage conflict - 178 miles |
| 10/31-11/2/03 | Littlewood Fences, Inc. Fall "A" Circuit II<br>Wellington, Florida<br>Mr. David Burton, Jr.<br>22439 Overture Circle<br>Boca Raton, Florida 33428<br>(561) 239-5270 | Denial received 8/7/02- Denied due to mileage conflict - 178 miles |
| | Fox Lea Farm "C"Circuit Grand Finale<br>Venice, Florida<br>Ms. Kimberly R. Aldrich<br>Fox Lea Farm, Inc.<br>P.O. Box 400<br>Venice, Florida 34284 | Denial received 8/7/02- Denied due to mileage conflict - 76 miles |
| 11/20-23/03 | SFHJA Annual Charity<br>Wellington, Florida<br>Mr. David Burton, Jr.<br>22439 Overture Circle<br>Boca Raton, Florida 33428 | Denial received 8/7/02- Denied due to mileage conflict 178 miles |

| | | |
|---|---|---|
| 11/27-30/03 | SJI Fall Classic<br>Wellington, Florida<br>Ms. Mary Silcox<br>Stadium Jumping, Inc.<br>1301 Sixth Avenue West<br>Ste 406<br>Bradenton, Florida 34205 | Denial received 8/7/02-<br>Denied due to mileage<br>conflict - 178 miles |
| | RMI Mid Florida December<br>Tampa, Florida<br>2908 W. Bayshore Court<br>Tampa, Florida 33611-2808 | Denial received 8/7/02-<br>Denied due to mileage 17<br>miles |

/bcg

## MICHAEL W. GALLAGHER

| "A" Date Denied and Location | Conflicting Show | Status |
|---|---|---|
| 7/12-16/00 Boone, North Carolina | Charles Summer Classic I Seabrook Island, South Carolina Classic Company, Ltd. Mr. Bob Bell Post Office Box 1311 Johns Island, SC 29455 (843) 768-5503 | Denied due to mileage conflict |
| 7/19-23/00 Boone, North Carolina | Keswick Hunt Club Keswick, Virginia  Charleston Summer Classic II Seabrook Island, South Carolina Classic Company, Ltd. Mr. Bob Bell Post Office Box 1311 Johns Island, SC 29455 (843) 768-5503 | Denied due to mileage conflict |
| 6/27-7/1/01 Boone, North Carolina | NCHJA Annual Raleigh, NC Ms. Sheri Bridges Box 33790 Raleigh, NC 27636 (919) 269-8785 | Denial received 2/27/01- Denied due to mileage conflict |
| 7/11-7/15/01 Boone, North Carolina | Biltmore Summer Classic I Asheville, NC Mr. Bob Bell Post Office Box 1311 Johns Island, SC 29455 (843) 768-5503 | Denial received 3/2/01 - Denied due to mileage conflict |
| 7/18-7/22/01 Boone, North Carolina | Biltmore Summer Classic II Asheville, NC Mr. Bob Bell Post Office Box 1311 Johns Island, SC 29455 (843) 768-5503 | Denial received 3/2/01- Denied due to mileage conflict |



| 12/1-12/2/01<br>Belleview, Florida | RMI Mid - Florida December<br>Tampa, Florida<br>Mrs. Pamela Rush<br>2908 W. Bayshore Court<br>Tampa, Florida 33611-2808<br>(813) 831-4986 | Denial received 3/2/01-<br>Denied due to mileage<br>conflict |
|---|---|---|
| 12/14-12/16/01<br>Belleview, Florida | Mid - Florida December<br>Ocala, Florida<br>Mrs. Pamela Rush<br>2908 W. Bayshore Court<br>Tampa, Florida 33611-2808<br>(813) 831-4986<br><br>Mid - Florida December<br>Tampa, Florida<br>Mrs. Pamela Rush<br>2908 W. Bayshore Court<br>Tampa, Florida 33611-2808<br>(813) 831-4986<br><br>Florida Christmas Classic<br>Bradenton, Florida<br>Mr. Jerry Mastromarino<br>4655 47th Street<br>Sarasota, Florida 34235<br>(941) 359-8158<br><br>Cypress Trails Winter "A" Series<br>Odessa, Florida<br>Mr. Douglas J. Weiland<br>3281 Landmark Drive<br>Clearwater, Florida 32761<br>(727) 772-1776 | Denial received 5/24/01-<br>Denied due to mileage<br>conflict |

2

| | | |
|---|---|---|
| 1/5-6/02<br>Belleview, Florida | RMI Mid Florida<br>Tampa, Florida<br>Mrs. Pamela Rush<br>2908 W. Bayshore Court<br>Tampa, Florida 33611-2808<br>(813) 831-4986<br><br>Littlewood Farm/AT Childrens Benefit<br>Wellington, Florida<br>Mr. Dave Burton<br>21755 El Bosque Way<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denied due to mileage<br>conflict |
| 1/12-13/02<br>Belleview, Florida | Jacksonville Winter Premiere<br>Green Cove Springs, Floirda<br>Mrs. George H. Hodges Jr.<br>Post Office Box 16771<br>Jacksonville, Florida 32245<br>(904) 655-1657<br><br>Littlewood Farm Mid-Circuit<br>Wellington, Florida<br>Mr. Dave Burton Sr.<br>21755 El Bosque Way<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denial received 5/24/01-<br>Denied due to mileage<br>conflict |
| 1/19-20/02<br>Belleview, Florida | Jacksonville Mid Winter<br>Green Cove Springs, Florida<br>Mrs. George H. Hodges Jr.<br>Post Office Box 16771<br>Jacksonville, Florida 32245<br>(904) 655-1657<br><br>Littlewood Farm Pre-Festival<br>Welllington, Florida<br>Mr. Dave Burton, Sr.<br>21755 El Bosque Way<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denial received 5/24/01-<br>Denied due to mileage<br>conflict |

| | | |
|---|---|---|
| 1/26-27/02<br>Belleview, Florida | Jacksonville Winter National<br>Green Cove Springs, Florida<br>Mrs. George H. Hodges Jr.<br>Post Office Box 16771<br>Jacksonville, Florida 32245<br>(904) 655-1657<br><br>Wellington Classic<br>Ms. Mary K. Silcox<br>Stadium Jumping, Inc.<br>1301 Sixth Avenue West, Suite 406<br>Bradenton, Florida 34205<br>(941) 744-5465 | Denial received 5/24/01-<br>Denied due to mileage<br>conflict |
| 2/2-3/02<br>Belleview, Florida | Jacksonville Winter A to Z<br>Green Cove Springs, Florida<br>Mrs. George H. Hodges Jr.<br>Post Office Box 16771<br>Jacksonville, Florida 32245<br>(904) 655-1657<br><br>Littlewood Circuit Finale<br>Wellington, Florida<br>Mr. Dave Burton, Sr.<br>21755 El Bosque Way<br>Boca Raton, Florida 33428<br>(561) 482-8700 | Denied due to mileage<br>conflict |
| 3/12-16/03<br>Tallahassee,<br>Florida | Classic Company, Ltd.<br>Mr. Bob Bell<br>Post Office Box 1311<br>Johns Island, South Carolina 29455<br>(843) 768-5503 | Denied due to mileage<br>conflict |

| | | |
|---|---|---|
| 3/19-23/03<br>Tallahassee,<br>Florida | Atlanta Spring Classic I<br>Conyers, Georgia<br>Mr. Bob Bell<br>Post Office Box 1311<br>Johns Island, South Carolina 29455<br>(843) 768-5503<br><br>Tampa Bay Classic<br>Tampa, Florida<br>Ms. Mary K. Silcox<br>Stadium Jumping, Inc.<br>1301 Sixth Avenue West, Suite 406<br>Bradenton, Florida 34205<br>(941) 623-5801 | Denied due to mileage<br>conflict |
| 3/26-30/03<br>Tallahassee,<br>Florida | Atlanta Spring Classic II<br>Conyers, Georgia<br>Mr. Bob Bell<br>Post Office Box 1311<br>Johns Island, South Carolina 29455<br>(843) 768-5503<br><br>Tournament of Champions<br>Tampa, Florida<br>Ms. Mary K. Silcox<br>Stadium Jumping, Inc.<br>1301 Sixth Avenue West, Suite 406<br>Bradenton, Florida 34205<br>(941) 623-5801 | Denied due to mileage<br>conflict |
| 6/25-29/03<br>Boone, North<br>Carolina<br>** | Ms. Sheri Bridges<br>Box 33790<br>Raleigh, NC 27636<br>(919) 269-8785 | Denied due to mileage<br>conflict |
| 7/9-13/03<br>Boone, North<br>Carolina<br>** | Classic Company, Ltd.<br>Mr. Bob Bell<br>Post Office Box 1311<br>Johns Island, South Carolina 29455<br>(843) 768-5503 | Denied due to mileage<br>conflict |

| | | |
|---|---|---|
| 7/16-20/03<br>Boone, North<br>Carolina<br>** | Classic Company, Ltd.<br>Mr. Bob Bell<br>Post Office Box 1311<br>Johns Island, South Carolina 29455<br>(843) 768-5503 | Denied due to mileage<br>conflict |